## SUPREME COURT.

JOHN McAVOY agt. THE MAYOR, ETC., OF THE CITY OF NEW YORK.

*Negligence of Croton Aqueduct Department — corporate, as distinguished from political, duties.*

The city of New York is responsible for any damage caused by the negligence of the Croton aqueduct department or department of public works in laying and keeping in repair the Croton water pipes in the streets of said city.

The duty of exercising care in the construction and repair of Croton water pipes in said city, is a corporate and not a political or governmental duty, and in its discharge, the commissioner of public works acts as the agent of the corporation and not as an independent public officer.

*Trial Term, November,* 1877.

THIS action was brought to recover for loss sustained through a flooding of plaintiff's premises from a break or burst in a Croton water pipe connecting a main, in the carriageway, with a hydrant on the sidewalk of Tenth avenue near One Hundred and Fiftieth street, in the city of New York. The complaint alleged that the defendants, in laying the pipe, had put down an insufficiently strong one, which bursted and flooded the plaintiff's premises, and when notified of the break had negligently failed to repair it. The answer was a general denial.

Upon the first trial before DYKMAN, J., in June, 1876, the defendant's counsel moved to dismiss the complaint on the grounds: First, contributory negligence of plaintiff. Second, that the defect in the pipe was a latent defect. The motion

was granted. On appeal to the general term the judgment was reversed and a new trial ordered. The second trial came on before BARRETT, J., November, 1877. After plaintiff's counsel had opened the case the defendant moved to dismiss the complaint.

*Wm. C. Whitney,* counsel to the corporation and *A. I. Requier,* for the motion, cited chapter 383, Laws 1849; chapter 335, Laws 1873; *Maximilian* agt. *The Mayor* (62 *N. Y.,* 160); *Tone* agt. *The Mayor* (*Ct of Apps., June,* 1877, *MS.*); *Ham* agt. *The Mayor* (*MS.*).

*James A. Deering* opposed, cited chapter 225, Laws 1842; chapter 231, Laws 1843; chapter 225, Laws 1845; chapters 90, 383, Laws 1849; chapters 235, 298, Laws 1851; chapter 342, Laws 1854; chapter 25, Laws 1857; chapter 446, Laws 1857, section 24; chapter 335, Laws 1873; ordinances (*Rev.,* 1866), 150; Dillon on Municipal Corporations, section 772, *et seq.; Bailey* agt. *The Mayor* (3 *Hill,* 531); *S. C.* (2 *Den.,* 433); *Furze* agt. *The Mayor* (3 *Hill,* 612); *Borden* agt. *Syracuse* (36 *N. Y.,* 54); *Lowenthal* agt. *The Mayor* (61 *Barb.,* 511); *People* agt. *Stevens* (51 *How. Pr.,* 103); *Ruggles* agt. *New River Company* (11 *W. R.,* 234); *Rapho* agt. *Moore* (8 *Am. R.,* 202); *Brown* agt. *New York Gas Company* (*Anthens, N. P.,* 391); *Lennon* agt. *Albany Gas Co.* (44 *N. Y.,* 459); *Selden* agt. *Delaware and Hudson Canal Company* (24 *Barb.,* 362); *Hay* agt. *Cohoes Company* (2 *N. Y.,* 59); *Robinson* agt. *New York and Erie Railroad* (27 *Barb.,* 512); *Bellow* agt. *Sackett* (15 *Barb.,* 96); *Penley* agt. *Clarke* (35 *N. Y.,* 520); *Bellinger* agt. *New York Central Railroad Company* (23 *N. Y.,* 42); *Fletcher* agt. *Rylands* (1 *Exchequer L. R.,* 265); *Cahill* agt. *Eastman* (10 *Am. Rep.,* 184); *Thurston* agt. *City of St. Joseph* (11 *Am. Rep.,* 453).

McAvoy agt. Mayor

Barrett, J. — This case differs from *Maximilian* agt. *The Mayor* (62 *N. Y.*, *p.* 160) and *Tone* agt. *The Mayor* (*MS.*), in several important particulars.

First. The commissioner of public works is one of the executive officers of the city (*Laws of* 1873, *chap.* 335, *sec.* 19). He is appointed by the mayor with the consent of the board of aldermen, and is removable by the mayor, for cause, subject to the approval of the governor (*sec.* 25).

He contracts in the name and for the benefit of the city and (*sec.* 91) such contracts are to be regulated by the ordinances of the common council.

He has no independent treasurer on whose requisition and to whom, as in the case of the police board, the comptroller pays *in solidi* the sums required for the department.

While in some special matters independent, he is mainly subject to the control of the municipality, and is, so to speak, one of its executive servants.

By the charter the common council is vested with power "to prevent encroachments upon, and obstructions to, the streets, highways, roads and public places, not including parks; and to authorize and *require* the commissioner of public works to remove the same." Also, "to regulate the opening of street surfaces, the laying of gas and water mains, the building and repairing of sewers, and the erecting of gas lights." Also, "to provide for and regulate street pavements, cross-walks, curb-stones, gutter-stones, sidewalks and the grading of streets." Also, "to make ordinances in relation to the construction, repair and use of vaults, cisterns, areas, hydrants, pumps and sewers."

It is further expressly provided, that the common council shall have power, "by resolution, to *require* the commissioner of public works to do any work or take any action proper, for carrying into effect the powers of the common council."

The duties of the commissioner of public works are harmoniously fitted to the due execution of these legislative powers, so that there is no incongruity in the scheme.

By section 71 of the same charter, he is given cognizance *and control,* " first, of all structures and property connected with the supply and distributon of Croton water;" " second, of the collection of the revenues arising from the sale or use of the Croton water;" "third, of opening, altering, regulating, grading, flagging, curbing, guttering and lighting streets, roads, places and avenues;" "fourth, of repairing and construction of public roads."

Here the word " *control*" must be read in the light of the context. It is not an independent control, which is meant, but an *exclusive agency* under *the control* of the common council, exercised through its lawful ordinances. Agency, in case of a municipal corporation, does not depend upon the *perfect efficiency of the control,* but upon the legislative intent (*See Barnes* agt. *District of Columbia,* 3 *Otto,* 541; also *Bailey* agt. *The Mayor,* 3 *Hill,* 531, *and* 2 *Denio,* 433).

Second. The duties of the commissioner of public works are not of a governmental or political character. His functions are not such as are performed (to quote from judge FOLGER's opinion in the Maximilian case) " by public officers in the discharge of duties imposed upon them by the legislature for the public benefit." The case of the streets is eminently a corporate matter; so as to the Croton water. The entire apparatus by which the latter is provided and distributed is corporate property. Corporate revenue is derived therefrom. It is true, as president GARDINER said in *Bailey* agt. *The Mayor,* that " no one can suppose that revenue to the city of New York formed the motive for this grant or for its acceptance." Nevertheless, in the collection of these revenues, the commissioner has but one principal — not the people of the state, not even the general public of the city, *but the corporation.*

The same with regard to the case of the structures. It is equally true that in a certain sense the Croton water is a public work. It is, of course, for the benefit of the public. But so is all corporate undertaking. What we assert is, that it is

not public in the governmental sense. The element of sovereignty is wanting, and that is the test.

Third. Similar cases, with respect to dangerous streets and sidewalks, have for years been tried, without even the suggestion of a doubt by either court or counsel as to corporate liability. As far back as *The Mayor* agt. *Furze* (3 *Hill*, 612) such liability was maintained as to neglected sewers. Again, in 1851, in *Lloyd* agt. *The Mayor* (5 *N. Y.*, 369). In this latter case the city was evidently held responsible for the negligence of the Croton aqueduct department, which, at that time, had " charge" of " the public sewers of the city." See Mr. Stevens' argument, on page 374, where he cites the act of 1849, sections 15 and 20. See, also, at page 370, judge INGRAHAM's opinion in the court below, where he says that "this principle has so often been recognized in this court as the law, and in many cases without objection on the part of the defendant, as scarcely to leave it an open question."

This, too, is conceded in the Maximilian case (*see page* 170) as to streets, bridges, common ways of passage and sewers.

Even in the case at bar, the point was not raised at the first trial, nor at the general term. It is fair to conclude that it is an afterthought, suggested by the result of the Maximilian, Ham and Tone cases. It proceeds upon the latest theory, namely, that the city is entirely and absolutely irresponsible; that its corporate existence is a mere name; that the municipality is the shadow and the departments the substance. This is what it comes to. For if the doctrine of' *respondeat superior* does not apply in the present instance, let me ask to what possible phase of injury to person or property can it be made applicable, so as to hold the city?

I cannot but think that there is a misapprehension as to the precise point decided in the Maximilian and Tone cases, and that there is nothing there to prevent this action from proceeding to a consideration upon the merits.

The motion to dismiss the complaint is therefore denied.