ULYSSES S. LITTLEFIELD *vs.* THE NEWPORT WATER COMPANY.

Penobscot.    Opinion December 23, 1912.

*Evidence.    Motion.    Negligence.    Pipe.    Surface water.    Water.    Verdict.*

The plaintiff claims that the defendant so negligently laid its street main in
   the street opposite to the plaintiff's house and fifty feet therefrom, that
   the heaving of the soil, in freezing and thawing, caused the pipe to break,
   and the water to escape, so that it percolated into the plaintiff's cellar,
   causing damage.  One ground of alleged negligence is that the defendant
   left a perpendicular pipe reaching from the main to the surface of the
   ground, uncased, and unprotected from the frost; but as the water had
   been shut off from that pipe, and there was no water in it, that allegation
   is of no consequence, since it is not claimed that water froze in the pipe and
   thus cracked it.

*Held:*

That upon the evidence, the only conclusion upon which the jury could base
   a verdict for the plaintiff is that water had been for three years, but inter-
   mittently, percolating through the soil fifty feet from the pipe to the cellar
   and that without showing anywhere on the surface.  The evidence does not
   warrant such a conclusion.

   On motion by defendant.   Sustained.

   This is an action on the case to recover damages to plaintiff's
house and cellar situated in Newport village, in the county of
Penobscot, and opposite one of the defendants' water mains.   The
defendant is the owner and operator of a certain water system in
said Newport, by which it supplies the town of Newport with water.
The claim of the plaintiff is that each winter since the pipes were
laid, large quantities of water coming from a leak in defendants'
pipe in the ground have flowed into his cellar, causing much dam-
age.   Plea, the general issue.   The jury returned a verdict for
plaintiff for $393.75, and the defendant filed a general motion for a
new trial.

   The case is stated in the opinion.

   *F. W. Halliday,* for plaintiff.

   *W. H. Mitchell, and John E. Nelson,* for defendant.

SITTING: SAVAGE, KING, BIRD, HALEY, HANSON, JJ.

SAVAGE, J. Case for negligence. The plaintiff obtained a verdict, and the case comes here on the defendant's motion for a new trial. In September, 1907, the Newport Water Company laid a two inch water main up Park Avenue in Newport to a point in front of the plaintiff's house. The main was in the southerly side of the street. The house was on the northerly side of the street, and fifty feet from the main. The main was about eight inches lower than the bottom of plaintiff's cellar. At this point in front of the plaintiff's house, the pipe was reduced to a one inch pipe by a reducing nipple, a few inches long, a shut off was put in, and a perpendicular one inch pipe with elbow was connected by a nipple to the shut-off, and came to the surface of the ground. Then it was extended on the surface to a trotting park, as a service pipe. At about the same time a service pipe was laid from the main across the street and into the plaintiff's cellar. It started within a few inches of the shut-off just referred to. This service pipe also had a shut-off on the plaintiff's premises, from twenty to twenty-five feet from the house. It is undisputed that the ground sloped away from the plaintiff's house to the north and the west; it is disputed whether it sloped to or from the house on the east; it is undisputed that on the south or road side of the house the ground sloped slightly from the traveled part of the road to the house,—from two to four inches in fifty feet.

The plaintiff complains that, each winter since the pipes were laid, large quantities of water have either flowed or percolated into his cellar, doing him much damage. He alleges that the water came from a break in the defendant's pipe in the ground at or near the connection between the two inch main and the trotting park service pipe. The negligence alleged and relied upon in argument is that the defendant laid the trotting park horizontal service pipe so closely to the surface of the ground, at the point where it was connected with the perpendicular pipe, that the heaving of the frozen ground in winter wrenched the pipe in the ground from its connection with the main, thus allowing the water to escape from the main. Counsel in his brief states the claim in these words: "As soon as

the frost came the pipe above the ground was raised, and acting on the connection under the ground, pulled it away from the main, causing a leak." It is not claimed that water froze in the pipe, and thus cracked it.

In February, 1911, the fourth winter, the pipe at this point was uncovered, and it was found to be broken or cracked. The parties agree substantially as to where the break or crack was. They disagree as to size of the pipe in which it was, and as to the size of the leak. But these latter questions are of no importance at present. The leak was between the main pine and the trotting park service pipe shut-off. And as it is not disputed that the water had been shut-off from that service pipe, and that there was no water in it that could freeze, the allegation in the writ that the perpendicular pipe had been left uncased, and unprotected from the frost, is of no consequence. The trouble was not in the perpendicular pipe. A few days previous to the discovery of the leak already referred to, the plaintiff uncovered a portion of his own service pipe on his own ground, and at the point where the shut-off was connected he found, he says, slush and water in large quantities. It is testified to for the defendant, and not denied by the plaintiff, that this service pipe also was cracked at that point.

The plaintiff contends that all the water which came into his cellar came from the break in the plaintiff's pipe in the street; and that at times it came in such quantities as to stand from one to three feet in depth. The defendant concedes that water has flowed into the plaintiff's cellar at times from some source, and that, when the cellar drain has been clogged, it has stood there to the depth of a foot and a half, but it denies that any part of the water has come from its pipe in the street. It contends, on the contrary, that it has come partly from surface water flowing from the street and ground in front of the house down to the house, and emptying into the cellar through holes in the walls, but chiefly from springs, or moisture in the ground at that place. It suggests indeed, that as there were two cracked pipes, one in the street fifty feet away, and one in the plaintiff's ground twenty or twenty-five feet away, there is no ground for saying that the water came from the street pipe

rather than the other, if it came from either; and that the presumption would be that the water came from the nearer one. The nearer one is not complained of in the writ.

With the plaintiff's testimony to guide us, it is clear that the same cause has been operative during the entire period from the first trouble in January, 1908, until the leak was discovered and repaired in February, 1911. The only difference has been in degree. This presents a rather remarkable, if not incredible, situation. It is, that the water was burrowing or percolating from the pipe to the cellar for three years, and yet no sign of it appeared on the surface of the earth. It is argued that it followed the service pipe under the ground. But the evidence tends to refute that. The plumber who repaired the break in the service pipe testified positively that no water was coming in the ditch from the street, and the plaintiff does not say that there was any. Although the plaintiff says that he spent many days, for which he now seeks to recover compensation, in seeking the leak, he seems to have found on the top of the ground no evidence of any. And no softening of the ground, even, was ever noticed anywhere, until about the time the street pipe was uncovered in 1911. Then the ground was found to be soft in the vicinity of that leak. It is true that the plaintiff testifies that in the winter of 1909 "it broke out, it filled the street, it flowed there for months, two feet of ice all over the street." But it would seem that the plaintiff must be in error about this, for in 1911, when the water was coming into his cellar, he renewed his search. Instead of digging up the pipe in the street, where he says it broke out so seriously in 1909, he began his search at the shut-off on his own service pipe. It would seem quite clear that at that time he had forgotten the alleged surface indications of 1909, if such exer existed.

Upon the plaintiff's theory, that the break existed as far back as January, 1908, another singular feature appears. The water flow into the cellar, as the plaintiff testifies, has been intermittent for the most part. The principal trouble has been in the winter. In fact, the plaintiff in his testimony omits all reference to summer conditions. Doubtless the freezing of the cellar drain made conditions worse in the winter than they otherwise would have been. But it

has been in the winter that the large quantities of water have come in, as he says. In one instance, as the plaintiff claims, the cellar filled two feet in less than twenty-four hours. If, as is argued, water from the break in the street pipe followed the plaintiff's service pipe ditch, or if it percolated through the soil to the cellar, we can think of no reason, and none has been suggested to us, why the flow should not be practically constant the year round. The pressure on the water in the pipes naturally would be about the same, summer and winter. This intermittent condition would be more likely to exist in case of water coming from a springy, wet soil, which is naturally affected by droughts, and, as well, by the ordinary summer heat and dryness in this climate.

We mention these points as illustrative of some of the difficulties in the plaintiff's case upon his own testimony. But we go further. The testimony is overwhelming that the soil in the vicinity of the plaintiff's cellar is wet and springy, that water from the soil flows into the cellar, that both before the defendant's pipe was laid in the street, and since it was repaired, the same conditions that the plaintiff complains of have existed in the cellar, though to a lesser degree than he states them.

Upon the evidence, the only conclusion upon which the jury could base a verdict for the plaintiff is that water had been for three years, but intermittently, percolating through the soil fifty feet from the pipe to the cellar, and that without showing anywhere on the surface. We do not think the evidence warranted such a conclusion. The verdict is manifestly wrong, and must be set aside.

*Motion sustained.*