CAPITOL TRUST COMPANY, Plaintiff, *v.* CITY OF SCHENECTADY, N. Y., and Another, Defendants.

ELLIS BLOCK, INC., Plaintiff, *v.* CITY OF SCHENECTADY, N. Y., and Another, Defendants.

Supreme Court, Schenectady County, October 29, 1928.

*Leary & Fullerton* [*James A. Leary* of counsel], for the plaintiffs.

*Borst & Smith* [*George B. Smith* and *William K. Hartpense* of counsel], for the defendant Arthur A. Johnson Corporation.

*Carleton H. Lewis*, for the defendant City of Schenectady

HEFFERNAN, J.  These cases arise out of the same circumstances and consequently were tried together.  In the early morning of July 31, 1926, a break occurred in one of the water mains of the defendant city, located beneath the surface of the street at the intersection of State street and Erie boulevard, the former being the main thoroughfare of the city over which there is constant traffic.  At this point there was a junction or so-called " Y " connection joining the Erie boulevard main with the State street main, permitting the water to flow in both directions on State street, and as a result of the bursting of the water main the premises of the plaintiffs were flooded and property belonging to them destroyed.  It is conceded that plaintiff Capitol Trust Company thereby sustained damages to the extent of $7,173.03, and that the plaintiff Ellis Block, Inc., was damaged in the sum of $1,800.

The city derives its water supply from artesian wells located approximately three miles outside the corporate limits.  There are three mains leading from the pumping station to the city, two of which are comparatively new.  By means of pumps the water is distributed throughout the municipality by mains of various sizes.  The one in which the break occurred had a diameter of twenty inches and was the oldest in point of service.  Although not at the identical place, five previous fractures occurred on this main, three between the pumping station and the city, and two on Erie boulevard and State street.  The water plant was constructed in 1893 and began to function in 1895.  At that time the

pumps were operated by steam. Later and in 1905 the steam pumps were discarded and others, electrically driven, were substituted. Subsequently to the installation of the water plant the city constructed two additional mains leading from the pumping station. At the location of the break the pipes were laid at a depth of three feet and three inches below the surface of the ground and were embedded in a loam and sandy soil. The main in question near the " Y " connection was supported by a steel girder by means of cables. There was a turn buckle in the cables, the object of which was to hold the pipe taut. The fracture in the pipe was on the upper section of the bell in the State street main. It extended irregularly about three feet in length and twenty inches in width, and occurred at the thinnest point of the casting. The I-beam and the concrete in which the main was embedded had dropped out of place under the break. At the time of this occurrence the water pressure, as indicated by the gauge, was 138.5 pounds, which was the highest pressure that had been exerted upon the main during the preceding month.

In June, 1926, the city and the defendant Johnson Corporation entered into a contract by the terms of which the latter agreed to install for the former two fifteen-inch sewers across State street under the water main involved. In the performance of its contract the Johnson Corporation excavated to a depth of about fifteen feet below the surface of the ground in the vicinity of the break. It also dug a five-foot trench at right angles to the main for the purpose of laying the sewer line underneath. The water main was then exposed to an extent of four feet and four inches. When the excavation was complete, a period of at least three weeks prior to the bursting of the main, defendant corporation discovered that there was a leak in the pipe near the bell. This fact was immediately reported to the city and, at the direction of the latter, defendant corporation dug out the soil around the bell and employees of the city were directed by it to calk the joint. The side and upper portions of this pipe were calked upon at least two different occasions but apparently no work was done underneath. The evidence disclosed that in the process of calking those engaged in that work repeatedly pounded the joint around the upper half of the bell approximately at the place where the break later occurred. Notwithstanding that, the leak continued during the entire time the excavation was open. The work of defendant corporation was prosecuted day and night, and the city maintained inspectors upon the job during the entire period whose duty it was to see that the contract was performed in accordance with the

plans and specifications. These inspectors, from time to time, observed the leaky condition of the main.

The sole question for determination here is one of liability. Plaintiffs, of course, are not responsible for the result. They contend that the fracture of the main was caused by the misconduct of both defendants. The plaintiffs charge both with culpable negligence in that they knowingly and carelessly created and permitted a dangerous situation to exist. It should be borne in mind that defendant Johnson Corporation was not installing the water main that caused the damage. It was engaged in the construction of a sewer system, working as an independent contractor, free from control by defendant city as to the manner of performance, although subject to inspection by the latter as to results. The right reserved by the city in its contract with the Johnson Corporation to supervise and inspect the work for the purpose of seeing that it conformed to the contract does not, of course, make the municipality responsible for the contractor's negligence. Under the circumstances disclosed here the contractor was not the servant or agent of the city, even though the latter reserved the right to change, supervise and inspect to the extent necessary to produce the results intended. After a careful review of the evidence, it seems to me that there is no proof in this record which would justify a finding that the defendant corporation was negligent in any respect which resulted in the breaking of the main. The preponderance of the evidence is that the work which that defendant was called upon to perform was done in a workmanlike manner.

The mere fact that plaintiffs sustained damages by flooding from the city's water main does not alone justify a recovery. A municipal corporation does not insure its citizens against damage from works of its construction. Its obligation and its duty in this respect are to be measured by the exercise of reasonable care and vigilance. Liability can only be predicated upon its neglect or misconduct. Here, however, the plaintiffs have been damaged without any fault on their part, and it is unquestionably a difficult thing for them to furnish evidence as to the precise cause of the break, and consequently they are entitled to the most favorable inferences which are fairly deducible from the testimony given in their behalf. It is common knowledge that city water mains do not break, if properly constructed, unless for some exceptional cause which may or may not be attributable to negligence. When a break does occur there is a cause. It may be that in this instance several concurring causes produced the result. Here, the evidence is meager and it is not an easy matter to say just what

caused the rupture. There is testimony by an expert engineer that it was due to a number of contributory causes. The " Y " varied in thickness from three-fourths of an inch to one and one-eighth inches, and the initial point of the fracture was at the thinnest place in the pipe where the connection of the casting only equalled one and one-half bells. This variation, generally speaking, is more than that found in a standard casting. As a result the casting was deficient in strength in several particulars. It is also quite obvious that this main was subjected to considerably more pressure than was originally contemplated. The evidence also indicates that the " Y " connection was improperly and carelessly supported. When the excavation was made it was apparent that the pipe was leaky and defective and the city had ample notice thereof. It failed to remedy this condition, although it made several vain attempts to do so. It seems to me that it is not an unreasonable inference that the city's employees were also negligent in the manner in which they attempted to calk the joint. The constant pounding on this casting at approximately the place where the break occurred surely had a tendency to weaken it. Undoubtedly the break resulted from one of the causes, or from a combination of the causes indicated. The plaintiffs have established several negligent acts on the part of the city and it logically follows that their damages must have been the direct result of one or all of them. Under such circumstances, it seems to me, they are not required to go further and distinguish by proof the particular one that caused their damage. A single accident may be the culmination or result of a number of negligent acts or omissions, or both. Therefore, a plaintiff, who pleads in his complaint all of the claimed acts of negligence, is entitled to recover upon proof of any or all of them.

Hence, the plaintiffs are entitled to judgment against defendant city for the damages stipulated, and as to the defendant corporation the complaint is dismissed.