28246.  CITY OF TALLAPOOSA *v.* GOEBEL.

DECIDED JULY 16, 1940.

*H. J. McBride,* for plaintiff in error.

MacINTYRE, J.   V. A. Goebel brought suit against the City of Tallapoosa for $1117, and recovered $300, for alleged flooding through a defective pipe line, of the basement of the building which he occupied, and certain property injured by the water. The defendant excepted to the overruling of its general and special demurrers, and to the overruling of its motion for new trial after verdict in favor of the plaintiff.

The plaintiff alleged that he installed and placed in the basement a dance-floor and skating-rink, a piano, an amplifying system, electrical transcription machine, and records. Also: "5. That on or about said date there was a water-main owned and maintained by the defendant, which ran east and west on the south side of said Strickland building [which plaintiff occupied] at a distance of some ten feet from said building; and that there was one cut-off pipe which had formerly been used and which had been abandoned and which was plugged at a point some two feet north of said main and some eight feet south of said building.  6. That about said time said cut-off pipe rusted through, thus creating and causing a leak from said main.  7. That it was the duty of defendant to inspect and to keep in proper repair said main and pipes or cut-offs leading from same; and that said defendant had for a long time failed to so inspect said main or said cut-off pipe; and that said leak developed and was caused as a direct and proximate result of defendant's failure to perform said duties.  8. That on or about November 27, 1937, defendant, through D. L. Hughes, who was then and there its servant and alter ego, and who was

then and there engaged in and about defendant's business, bored a hole about three-quarters inch in diameter in the south wall of said building occupied by plaintiff in the basement where his said property was located, and that the said leak already described came through; that is, water came through said hole into said basement, ruining plaintiff's property, as will be herein shown. 9. That defendant failed to provide an exit for said water after boring said hole, and failed to stop said hole up or to cut off the water or to stop the flow of water into and upon plaintiff's property, and as a consequence said water continued to flow into said basement for several days, soaking, warping, and ruining his property. 10. That defendant was negligent and careless in boring said hole and causing said water to flow into said building. 11. That defendant was negligent and careless in failing to provide an exit or escape for the water in such manner as to prevent damage to plaintiff. 12. That defendant's negligence and carelessness [was] in failing to cut off the water and thus prevent damage to petitioner. 13. That defendant was negligent and careless in failing to stop or to close said hole, thus preventing damage to petitioner. 14. That petitioner was free from fault and blame in the premises. . . That plaintiff had no knowledge or notice that said hole had been bored in said hole [wall] or that said water was running into said basement and was ruining and had ruined his property until same had been so flowing for several days and had already ruined said property when plaintiff first gained any knowledge." The plaintiff further alleged that he gave proper notice to the city as provided in the Code, § 69-308, where suit is brought against a municipality, and attached to his petition a copy of the notice and demand. Also attached was an itemized list of the property damaged.

■ The defendant contends that the plaintiff bases his claim primarily on allegations 5, 6, and 7, and demurs on the ground that "the allegations of said petition do not constitute or show a cause of action in plaintiff against this defendant." The defendant argues in its brief that this demurrer should be sustained, because this "allegation in respect to the duty of defendant and failure to perform such duty is an allegation of absolute duty to inspect and keep in repair, whereas the duty resting on defendant is to use ordinary care in the maintenance of its water-mains." The defendant further argues in its brief, with respect to the gen-

4

eral demurrer, that "it is not alleged what length of time there was a failure to inspect, what length of time in which it could be reasonably anticipated that said pipe would rust through, or what were the circumstances requiring inspection. . . It is not alleged how or in what way the boring of this hole was in the performance of or connected with any ministerial duty devolving on the city." A special demurrer, and not a general demurrer, is the remedy for a want of certainty and definiteness in a petition; and thus in this case, even if the petition might be subject to special demurrer on the ground that several paragraphs might contain uncertain and indefinite statements, it is not subject to a general demurrer. *Citizens Bank* v. *Union Warehouse Co.*, 157 *Ga.* 434 (8 a), 456 (122 S. E. 327).

It is not the character or name of the agent who executes the act, but it is the act itself, which determines whether it be governmental or ministerial. *McCrary* v. *Rome*, 29 *Ga. App.* 384, 386 (115 S. E. 283). This court and the Supreme Court have held that in maintaining a waterworks the city is carrying on a quasi-public business, a ministerial function, and that the city is liable for the negligence of its agents and servants in respect thereto. *City Council of Augusta* v. *Mackey*, 113 *Ga.* 64, 68 (38 S. E. 339); *Huey* v. *Atlanta*, 8 *Ga. App.* 597 (70 S. E. 71); *City of Rome* v. *Justice*, 40 *Ga. App.* 196 (149 S. E. 88); *City of Atlanta* v. *Blackmon*, 51 *Ga. App.* 165 (179 S. E. 842); *Carruthers* v. *Hawkinsville*, 42 *Ga. App.* 476 (2) (156 S. E. 634). A municipal corporation which maintains a water system in a governmental capacity and for a governmental purpose only, such as for the extinguishment of fires, is not liable for damage by water escaping from its pipes, even though its servants are negligent. A municipal corporation is not an insurer of its waterworks; but upon the theory that the maintenance of a public water-supply system for profit by a municipality is a private corporate matter, it has been held that a municipal corporation is liable for damages to property caused by the bursting or leakage of its water-pipes or hydrants as the result of negligence upon the part of its employees. Norfolk &c. R. Co. *v.* Amicon Fruit Co., 269 Fed. 559 (14 A. L. R. 552(a)); Goldman *v.* Boston, 274 Mass. 329 (174 N. E. 686); Capitol Trust Co. *v.* Schenectady, 133 Misc. 56 (231 N. Y. Supp. 119); McAvoy *v.* New York, 54 How. Pr. 245; Allied Realty Co. *v.* Philadelphia,

95 Pa. Super. 62, 64; Brown v. Grand Rapids, 265 Mich. 465 (251 N. W. 561); Ettlinger v. New York, 58 Misc. 229 (109 N. Y. Supp. 44); Hand v. Brookline, 126 Mass. 324; Kelly v. Winthrop, 219 Mass. 471 (107 N. E. 414). For a clear distinction between a governmental and a ministerial function of a corporation see *Mayor &c. of Savannah* v. *Jordan,* 142 Ga. 409, 410 (83 S. E. 109, L. R. A. 1915C, 741, Ann. Cas. 1916C, 240). It has been said that the power of a city to construct and operate waterworks (which is granted by charter in the instant case: Ga. L. 1896, pp. 247, 253) is not a political or governmental, but a private or corporate, power granted and exercised, not to enable it to control its people, but to authorize it to furnish to itself and its inhabitants water for their private advantage. City of Winona v. Botzet, 169 Fed. 321 (23 L. R. A. (N. S.), 204), 216. In furnishing water to private consumers, the city is acting in a private business capacity, and not in its governmental capacity, and it is bound to exercise ordinary care, namely, that reasonable degree of care, in view of the dangers involved, which the great mass of ordinarily prudent persons engaged in the same or similar business would and do exercise under like circumstances. For any failure to exercise this degree of care, proximately causing injury to another, the city is liable to the same extent that a private person or a corporation operating a waterworks system is liable; no more and no less. 14 A. L. R. 554.

In discussing the liability of a city for negligence of its agents with reference to its waterworks, the superior court of Pennsylvania, in Morgan v. Duquesne Borough, 29 Pa. Super. 100, 104, said: "In this action of trespass the plaintiff's right to recover depends upon her injury resulting from the negligence of the defendant. Therefore she was bound to show that the alleged damage resulted from either a faulty or negligent construction of the defendant's water line, or, the same being properly constructed, it had become out of repair and was and had been leaking so that the borough was negligent in not repairing the line after notice, actual or constructive, of its condition, or that the borough was guilty of negligence in failing to exercise proper care, caution, and diligence which, under the circumstances, reasonable and ordinary prudence would require to be exercised." See Herron v. Duquesne, 34 Pa. Super. 231. In 6 McQuillin on Municipal Corporations, § 2852,

quoting from Simon v. New York, 82 Misc. 454 (143 N. Y. Supp. 1097), it is said: "The liability in such cases is clearly stated thus: In all sewer or water-main cases cited by the plaintiff, in which the city was held liable, there was either evidence of actual negligence in the construction or operation of the water-main or sewer, or notice to the city authorities of the break or overflow, accompanied by neglect on their part to repair promptly, or actual notice by reason of like prior occurrences that the sewer or pipe was defectively constructed or maintained. . . A municipality is not an insurer of its water or sewer system, any more than of its streets. It is required only to use reasonable care in establishing and maintaining such a system." The petition in the instant case shows the jurisdiction of the court, that the defendant was under duty to the plaintiff, the facts from which the duty arose, that there was a breach of duty, and that the plaintiff was damaged by such breach; therefore, the petition sets out a cause of action and is good as against a general demurrer. North Augusta Electric &c. Co. v. Martin, 118 Ga. 622 (45 S. E. 455). The judge properly overruled the same.

■ We now consider the special demurrers. Paragraph 7 of the petition is attacked for the reasons that "the allegations, both of conclusions of law and as averments of fact, are too indefinite and uncertain, and that the allegations of conclusions of law are erroneous ones." The defendant further complains of the joining in the petition "of the alleged acts of negligence . . set out in paragraphs 5th, 6th, and 7th, and the positive wrong, or separate act of negligence—if it can be so regarded—in paragraph 8th, and the succeeding paragraphs through paragraph 13th, which are connected with and dependent on the allegations of paragraph 8th. . . The allegations of paragraph 7th are allegations of a failure to perform; the allegations of paragraph 8th complain of the performance of an act. If both of these paragraphs can be said to set out a cause of action, then the petition alleges not one but two causes of action in the same count." Paragraph 6 of the demurrer complains of variance between the allegations made in the demand, copy of which is attached to the petition, and the allegations of the petition, in respect to the boring of the hole in the wall of the building, contending that under the ruling in Harrison Co. v. Atlanta, 26 Ga. App. 727 (107 S. E. 83), "recovery can only be had

for acts of negligence specified in the demand, and, as a corollary to this rule, there can be only recovery for acts of negligence alleged in the petition, although other acts may have been alleged in the demand." This court in *Page* v. *Virginia-Carolina Chemical Co., 62 Ga. App.* 727 (9 S. E. 2d, 857), approved the following rules: "Reasonable definiteness and certainty in pleading is all that is required; and factitious demands by special demurrer should not be encouraged. Indeed, it is the opinion of the members of this court that this 'critic,' not of the old school but of recent times— special demurrer, has lately been given much greater recognition in our courts than his importance or his usefulness has ever deserved." *Busby* v. *Marshall*, 3 *Ga. App.* 764 (60 S. E. 376). "The legitimate function of a special demurrer is to compel the pleader to disclose whether he really has a cause of action or defense. The requirement that a plaintiff shall 'plainly, fully, and distinctly' set forth his ground of complaint does not mean that he shall disclose the evidence upon which he relies, or indulge in needless particularity, but means only that his demand shall be set forth in terms sufficiently full and distinct to enable the court to determine whether a cause of action exists, and his adversary to understand the exact nature of the claim made against him." In *Fuller* v. *Inman*, 10 *Ga. App.* 680, 694 (74 S. E. 287), it was said: "A general allegation of negligence is a mere conclusion. The conclusion may be wrong; and therefore the particular facts relied on to support the conclusion should be pleaded. It is permissible, however, to set forth the facts, and then conclude that these facts amount to negligence. Demurrer will then raise the question whether the conclusion is good in law." In *Pacetti* v. *Central of Georgia Railway Co., 6 Ga. App.* 97 (3) (64 S. E. 302), it was said: "A pleader may, without subjecting his petition to demurrer [special], allege matters by way of general conclusion, where the specific facts upon which the conclusion rests are detailed with requisite definiteness." Specific facts upon which the conclusions of negligence rest in the instant case were sufficiently definite.

With reference to the allegations of negligence, the Supreme Court has said that the better practice in actions for damages on account of negligence is to make each distinct act of negligence the subject of a separate paragraph. *Atlanta, K. & N. Ry. Co.* v. *Smith*, 119 *Ga.* 667, 668 (46 S. E. 853). In paragraph 7 of the petition

the plaintiff was setting forth an act of negligence which was one of nonfeasance, whereas in paragraph 8 the act of negligence set forth was a misfeasance, and the subsequent allegation in paragraph 17 "that the damage to said property is a direct and proximate result of the negligence of defendant as herein alleged" is but a mere general allegation of negligence. "When a petition sets forth specific allegations of negligence, but also includes a general allegation of negligence, the specific will be considered as amplification of the general, and the plaintiff's right of recovery depends upon the establishment of negligence on one or more of the specific particulars alleged." *Lawrence* v. *Georgia Railway & Electric Co.,* 9 *Ga. App.* 309 (71 S. E. 593). Paragraph 6 of the demurrer complains of a variance between the notice and the petition, and cites *Harrison Co.* v. *Atlanta,* supra. The notice as required by Code, § 69-308, where suits are brought against a municipality, "does not require absolute exactness of description but simply that information as to the matters referred to may be given with sufficient definiteness to enable the city authorities to examine into the alleged injuries and determine whether the claim shall be adjusted without suit." *Langley* v. *Augusta,* 118 *Ga.* 590 (11) (45 S. E. 486, 98 Am. St. R. 133) ; *City of Atlanta* v. *Blackmon,* 50 *Ga. App.* 448 (178 S. E. 467). The notice in the instant case was sufficient under the rule in the *Langley* case, and there was no fatal variance between the notice and the petition, for the notice described the general grievance against the city, as set out in the petition, and in a general way apprised the city of the time, place, and extent of the injury. *City of Atlanta* v. *Harris,* 52 *Ga. App.* 56, 58 (182 S. E. 202). The instant case is distinguishable from *Harrison Co.* v. *Atlanta,* supra, on its particular facts. The petition was sufficiently full and distinct to put the defendant on notice of the exact nature of the claim against it; and the special demurrers were properly overruled.

■ The defendant contends, under the general grounds, that there was an entire lack of evidence tending to show any defect in the water main occasioning a leak, and that the defendant did all that it could to locate the source of water after having been put on notice of the defect. The burden rested upon the plaintiff to show that his damages resulted from the negligence of the defendant; and this he could have done by showing the injury to his property

by the water escaping from the defendant's line, followed by evidence of unreasonable neglect in repairing the line after actual notice, or for so long a time that the jury could infer negligence on the part of the city officials in not discovering the defect in the line even without notice. "The borough [city] can not defend as a matter of law because its officials had neither actual nor constructive notice. There may be a recovery on the ground of the negligence of the borough officials in not making reasonably careful inspection of its water lines from time to time. All of these questions of notice and negligence in failing to discover the remedy and defects in the water line were properly for the consideration of the jury." Morgan v. Duquesne, supra, 105. It appears from the testimony of R. C. Green, a witness for the defendant, that when a person desired to "tap" the water main for the purpose of carrying water to him, "he made application to the city to have the main tapped, and the city had the water superintendent tap it and made a charge of five dollars to put in a tap. Just how much of the pipe did the city itself put in, they made a tap and put in what is called a goose-neck and cut-off. The goose-neck leads out of the main. The cut-off valve is very close to the main. . . The consumer pays for the tap, that includes the material and labor, the services. Pipes [lateral or service pipes] are inserted in the cut-off. The goose-neck is what goes into the main, it screws in by threads. As to whose property that pipe goes off, . . I suppose it would be the customer's, the customer pays for it." Mr. Hughes, superintendent of the waterworks system, testified: "When the consumer desires to be furnished with water the city taps the water main and the party that uses the water pays five dollars for the tap; from the main on that is theirs; they pay for that. They tap a hole in the main where you can put a pipe in there to furnish the people water. The city does not extend its work at all, from the main on it belongs to the man that is using the water. The city supervises the tapping; the consumer pays for this tapping. The small pipe belongs to the man that owns the property."

With reference to the liability of a city for damages from leaking lateral pipes, it was said in Terry v. New York, 8 Bosw. 504, 510: "The injury in this case arose from defects in the lateral service pipes; these are inserted in the main street pipes by private individuals at their own cost and risk, to bring the water into their

own premises for consumption, and they remain the property of such individuals. In such case the defendants are no more liable for the result of an imperfection in their construction than for those of vessels in which citizens might carry the water from the reservoirs if they were public fountains. The defendants are trustees of the water as an article of public consumption, and are bound to furnish it to all who desire to use it, under proper regulations, but they are not bound to supervise the insertion of service-pipes or superintend their fabrication, fitting, and preservation, except to prevent injury to their works; the water drawn through private service pipes becomes as much private property as though it had been sold and the subsequent ill use of it by negligence or otherwise to the injury of another can not make the defendants liable any more than if they had sold an axe with which trespasses had been committed by cutting timber on another person's property."

As to whether the leak in question occurred in the defendant's water-main or in the lateral or service-pipes, R. C. Green, chairman of the water committee, testified: "It [the leak] was beyond the cut-off away from the main; there was no leak between the cut-off and the main that we could find any indication. There was no indication that there was a leak beyond the cut-off valve. There was not any leak in the cut-off valve. I said there was no leak between the cut-off and the main." I. M. Thompson, mayor of Tallapoosa and a witness for the defendant, testified: "There was not any leak from the main. There was not any leak from the main out to the cut-off. There was not any leak from the cut-off valve, itself." The plaintiff's testimony shows that the leak was in the lateral or service-pipe. He testified: "I saw water running out of there, out of the pipe, I sure did. Somebody, I think it was Tom Daniel, held his hand up under there, and I saw the clear water running into the muddy water; and he said, 'There's the leak, right there,' just about an inch or so beyond the cut-off. I couldn't say whether it was just exactly an inch or not, but it was just a little piece from the cut-off. I mean a cut-off valve; yes, when he cut it off, it stopped. . . The water came from next to the cut-off, and when they cut it off it quit running. It was coming from the other side of the cut-off [the side leading away from the water-main]."

The evidence therefore shows, as contended by the defendant, that the water came from a leak in a lateral pipe not the property of the city; and a recovery could not be had on the theory that the city negligently maintained its water-mains and connections. Littlefield *v.* Newport Water Co., 110 Me. 129 (85 Atl. 482). However, the law imposes upon both parties the duty of using ordinary care. It was the duty of the city to use ordinary care, to construct and maintain in proper condition its water-mains and water system, and it was the duty of the user of the water, or the property owner to whose property the lateral pipe ran, to use ordinary care to maintain its lateral or service-pipes. Neither had a right to rely upon the exercise of all due care by the other. Therefore the plaintiff can not maintain that the damage to his property was occasioned by the negligence of the city, if it would not have occurred but for his own or some one else's negligence. The water flowed through the pipes as a continuous stream, and the same duty rested on each to maintain in proper condition his part of the system to prevent the escape of the water. But if the city failed, after notice of the leak, to use ordinary care to turn off the water and *avert the danger of damages* in which another's negligence (failure to repair the lateral pipe) had placed the plaintiff's property, the plaintiff may nevertheless recover. Mann *v.* Henderson, 154 Ky. 154 (156 S. W. 1063). See also Birmingham Water Works Co. *v.* Martini, 2 Ala. App. 652 (9), 660 (56 So. 830); Dunston *v.* New York, 91 App. Div. 355 (86 N. Y. S. 562). Therefore, even if the city had exercised ordinary care in trying to locate the leak in its water system in the street, which had caused an accumulation of water therein, and had exercised ordinary care in boring a hole in the side of the wall and in inserting a pipe therein for the purpose of eradicating the seepage of water into the cellar, and thereby caused the water to flow into the cellar through the pipe, nevertheless the jury were authorized to find that the city, after putting in a tin receptacle on the cellar floor (about ten-gallon capacity) at the end of the pipe to catch the water, failed to exercise ordinary care in not having a competent person to prevent the receptacle from overflowing, it appearing from the evidence that "that lard-can kept running over with water. Nobody was around there to take care of it, empty it out, not right then but later on the city did put a negro in there. . . During

12

the time they had this can there [two or three days] they had a negro in there one day." The jury were further authorized to find that the city failed to exercise ordinary care in waiting "two or three days" before putting in a long pipe in order that the water might be drained through the cellar and out of a window, and thus prevent water from flowing into the cellar. The principles of law applicable to the case at bar were in effect submitted to the jury in the judge's charge. The evidence authorized the verdict, and the judge did not err in overruling the motion for new trial.

■ With reference to the special grounds of the motion for new trial the defendant says: "We make no complaint of this, further than one complaint that the evidence would not authorize the submission of the question to the jury. . . The jury should at least have been confined, in their consideration of the case, to a consideration of whether the damage was caused by the particular defects alleged in the petition." As we have said, all questions of notice and negligence in failing to discover and remedy any defects in the water line were properly for the consideration of the jury. The case was therefore properly submitted to the jury. With reference to the latter contention we quote from the judge's charge: "In this connection, if the plaintiff recovers at all he must recover upon the allegations he makes of negligence against the defendant." The special grounds are not meritorious.

*Judgment affirmed. Broyles, C. J., and Gardner, J., concur.*