72969. SMITH v. HAWKS et al.
72970. FIRST BANK OF SAVANNAH v. HAWKS et al.
72971. ABBOTT v. HAWKS et al.
72972. SAVANNAH BANK & TRUST COMPANY
v. HAWKS et al.
72973. SMITH v. GILL et al.
72974. SMITH v. BRUNSON et al.
72975. SMITH v. ANDREWS et al.
72976. SMITH v. HINELY et al.
(355 SE2d 669)

CARLEY, Judge.

These eight companion cases arise from the following set of facts:

In 1963, the Pine Forest Utility Corporation (Corporation), as settlor, created an express trust. The Industrial Bank of Savannah was named as the trustee. The trust document conveyed to the Industrial Bank the title to such property of the Corporation as was being used to provide water and sewerage services to the Pine Forest Subdivision. The purpose of the trust was to secure the Corporation's obligation to furnish water and sewerage services to the properties located in the subdivision. See OCGA § 53-12-31. In 1972, the Industrial Bank merged with appellant-defendant First Bank of Savannah (First Bank). In 1974, appellant-defendant T. A. Smith, Jr. (Smith) became the sole shareholder and chief executive officer of the Corporation.

In 1979, the Corporation, as settlor, again entered into an agreement for the purpose of creating an express trust pursuant to OCGA § 53-12-31. However, on this occasion, the agreement purported to convey the title to the Corporation's property to appellant-defendant Savannah Bank & Trust Company of Savannah (Bank & Trust) as trustee. This 1979 transaction was undertaken without any regard to the trust previously created in 1963, wherein the Industrial Bank had been named the trustee and had been conveyed title to the Corporation's property.

In 1983, the Corporation yet again entered into what was denom-

inated as a trust agreement. However, OCGA § 53-12-31 was not the authority relied upon for this 1983 agreement. In the agreement, the Corporation did not attempt to convey title to its property outright for the purpose of securing its obligation to furnish water and sewerage services to the properties located in the Pine Forest Subdivision. Instead, the Corporation conveyed the title to its property "subject to existing Trust Indentures." The Corporation thereby, in effect, transferred only its possession and control of the Pine Forest water and sewerage systems to appellant-defendant Laurie Abbott (Abbott) who, as "trustee" and for a fee, agreed to assume the Corporation's obligation with regard to the operation and maintenance of the systems. This agreement between the Corporation and Abbott was terminated in May of 1984, at which time the Corporation resumed the actual operation and maintenance of the system.

The event which led to the filing of these eight separate cases is the contamination and pollution of the Pine Forest water system. As the result of this contamination and pollution, one or more of the appellee-plaintiff property owners in the Pine Forest Subdivision filed each of these suits against one or more of the appellant-defendants, seeking damages and such other relief as might be appropriate. In each of the cases, the respective appellant-defendant filed a motion for summary judgment which was denied by the trial court. The orders were, however, certified for immediate review and these appeals result from this court's grant of appellants' applications for interlocutory review. The eight cases are hereby consolidated for disposition in this single opinion.

*Case Nos. 72970, 72972.*

1. The first issue to be resolved is which, if either, of the appellant-defendant banks, the First Bank or the Bank and Trust, occupies the capacity of trustee of the Corporation's property.

"A trust may be created to hold *title to properties* used or useful in furnishing utilities or other services in order to secure an obligation to furnish the utilities or services to other property to be benefited by the utilities or services. Title to the property conveyed to the trustee *shall vest and remain in the trustee* for the benefit of the several owners from time to time of the property for the benefit of which the trust is created. . . ." (Emphasis supplied.) OCGA § 53-12-31. It is thus apparent that the res of a trust that is created pursuant to OCGA § 53-12-31 is the title to property. Under the facts of record, it is also clear that the title to the Corporation's property vested in the Industrial Bank when it was named the trustee in 1963. The statute provides that vested title is to "remain in the trustee." The issue thus becomes whether the title that vested in the Industrial Bank in 1963

subsequently passed to First Bank or to the Bank and Trust or to neither.

In the 1963 trust agreement, the Corporation did provide a method for securing the appointment of a successor trustee, but did not reserve the right to divest the Industrial Bank of its capacity as trustee by the act of unilaterally naming a successor trustee. Accordingly, the Corporation's act of entering into a new trust agreement in 1979 would be totally ineffective to confer upon the Bank and Trust the capacity of lawful successor trustee. " 'One who creates a trust has a right to provide a method for filling vacancies and for the appointment of successors in trust; and where the trust deed provides the particular manner in which a substituted trustee shall be appointed, the directions *must be carefully followed.*' [Cit.]" (Emphasis supplied.) *Griffin v. Haden*, 172 Ga. 478 (1) (157 SE 686) (1931).

It is urged that the Corporation's entry into the 1979 agreement constitutes the creation of an entirely new trust with Bank and Trust serving as the trustee. The res of the purported 1979 trust was the title to the Corporation's property. However, the title to that property had vested in the Industrial Bank in 1963. The title to the property had not revested in the Corporation in 1979 by virtue of its exercise of any right to revoke the 1963 trust. The Corporation could not, in 1979, create a valid trust having as its res property the title to which the Corporation did not have. "As to the rules governing the creation of trusts, an elementary one is that a transfer of identifiable subject matter for the benefit of another is essential. [Cits.]" *Wolfe v. C & S Nat. Bank*, 221 Ga. 412, 415 (144 SE2d 735) (1965). "A deed from a grantor, when no title in him is shown, although good as color of title, is insufficient to transmit title to the grantee." *Fitzpatrick v. Massee-Felton Lumber Co.*, 188 Ga. 80, 81 (5) (3 SE2d 91) (1939). "There being no trust [res] at the time of the . . . appointing [of the Bank and Trust as] trustee, [its] appointment as such was inoperative. . . ." *Smith v. Frost*, 144 Ga. 115, 116 (2a) (86 SE 235) (1915). Accordingly, the Corporation's act of entering into a new trust agreement did not have the effect of creating a new trust in 1979.

It is also urged that a trust by estoppel was created in 1979 when the Bank and Trust agreed to serve as trustee. If there were no issue concerning the creation of an otherwise valid trust in 1979, the Bank and Trust would, under the evidence, be estopped to disclaim its trusteeship. See OCGA § 53-13-1. However, the Bank and Trust's ostensible acceptance of a trusteeship in 1979 cannot give rise to a valid trust if, as a matter of law, no such valid trust was then capable of being created by the Corporation. " 'Not even estoppel can legalize or vitalize that which the law declares unlawful and void.' [Cit.]" *Dobson v. Brown*, 225 Ga. 73, 76 (2c) (166 SE2d 22) (1969). As discussed above, the Corporation did not have title to the property when it pur-

ported to convey that title in trust in 1979. "[A]n estoppel [can] not, in and of itself, operate to convey title to the [Corporation's] property to the [Bank and Trust]. Estoppels do not convey title in this state. [Cit.]" *Kennedy v. Hannans*, 246 Ga. 55-56 (1) (268 SE2d 646) (1980). See also *Bussey v. Bussey*, 157 Ga. 648 (3) (121 SE 821) (1923). Accordingly, no trust by estoppel was created in 1979.

Under the evidence of record, title to the Corporation's property vested in the Industrial Bank in 1963 and the Corporation's efforts in 1979 to convey that title to the Bank and Trust as trustee were void and ineffective. It follows that the trial court erred in denying summary judgment in favor of the Bank and Trust in Case No. 72972. The judgment in that case is therefore reversed.

2. First Bank asserts that it cannot be the trustee because it has no trust agreement with the Corporation and has never specifically been named as a trustee. It is undisputed, however, that the Industrial Bank was the valid trustee as to the title to the Corporation's property when, in 1972, it merged with First Bank. The law in effect at the time of the Industrial Bank's merger with First Bank provided, in relevant part: "Such bank into which the other or others shall be merged, or the consolidated bank, as the case may be, *shall succeed to all* obligations, *trusts*, and liabilities, and *be held liable* to pay and discharge all such debts and liabilities and *to perform all such trusts in the same manner as though such bank into which the other or others shall have become merged,* or the consolidated bank *had itself incurred the obligation* or liability. . . ." (Emphasis supplied.) Former Code Ann. § 13-1407. See also Former Code Ann. § 13-1406; Existing OCGA § 7-1-536 (e). Under the authority of these former statutory provisions, First Bank succeeded by operation of law to the trusteeship upon the merger with the Industrial Bank. Accordingly, the trial court did not err in denying summary judgment to First Bank on the ground that it never was and is not now the trustee of the Corporation's property.

3. As another ground of its motion for summary judgment, First Bank urged that, as the uncompensated trustee of a trust created pursuant to OCGA § 53-12-31, it had incurred no liability for which damages would be recoverable by appellee-plaintiff property owners.

The underlying purpose of the trust was neither to transfer to the uncompensated trustee immediate possession of the Corporation's property nor to impose any immediate duty on the trustee to undertake the operation and maintenance of the Corporation's water system. The possession and operation of the water system were to remain with the Corporation and the purpose of the trust was merely to vest title to the property in the trustee as a means to secure the Corporation's continuing obligations to operate and maintain the system. As for the trustee's duties to effectuate the underlying purpose of se-

curing the settlor's obligation to furnish utility services, the applicable statutory provision provides that the "trust *may* authorize the trustee to take possession and operate the property conveyed to him and to exercise the power of sale or conveyance or other powers therein set out, *on the terms and conditions therein set out.* The trust shall be valid, executory, and *enforceable according to its terms.*" (Emphasis supplied.) OCGA § 53-12-31. It is thus clear that the trustee's duties under a trust created pursuant to OCGA § 53-12-31 do not include any on-going obligation to possess, operate or maintain the utility for the beneficiaries and the duties that a trustee does owe to the beneficiaries are to be determined exclusively by reference to the terms of the trust agreement. It follows that the statutory provisions of OCGA § 53-13-51, imposing a general duty to exercise ordinary care in the preservation and protection of trust property in the possession of the trustee, and of OCGA § 51-1-19, imposing general liability upon a compensated trustee for his negligence, are inapplicable here. Compare *C & S Nat. Bank v. Haskins*, 254 Ga. 131, 137 (4) (327 SE2d 192) (1985).

According to the terms of the trust agreement sub judice, no mandatory duty whatsoever is imposed upon the trustee. The trustee's duty is limited exclusively to the exercise of a discretionary power. The agreement provides: "Should [the Corporation] fail to operate and manage the water . . . [system], in the manner and under the conditions specified . . . and should [the Corporation] fail, after notice in writing from the Trustee, to correct such failure with reasonable dispatch, then Trustee *shall have the right* to immediate possession of the water . . . [system] for the purpose of operating and maintaining the same, and the right to hold, use, operate, manage, and control the same either itself or by or through [those] for whose benefit this trust is created and it *may take possession* thereof for the purpose of operating the same. . . ." (Emphasis supplied.) Thus, by way of securing the Corporation's obligation to furnish water to appellee-property owners, First Bank, as trustee, has the right, under certain terms and conditions, to oust the Corporation from possession and to undertake the operation of the water system but First Bank is given discretion as to whether it will exercise that right.

The issue thus becomes what remedy would be available against First Bank, as trustee, for a failure to exercise its discretionary power to oust the Corporation from possession and operation of the water system. "Discretionary powers of . . . trustees are not beyond the reach of judicial inquiry. The discretion of . . . [a] trustee may be controlled by a *court of equity* when the . . . trustee has abused his authority or his trust. [Cits.]" (Emphasis supplied.) *Powell v. Thorsen*, 253 Ga. 572, 573-574 (3) (322 SE2d 261) (1984). "Where the trustee commits or threatens to commit a breach of trust by an abuse of

his discretion, either in acting or in refusing to act, the court may interpose in various ways. It may (1) direct the trustee to act where his failure to act is an abuse of discretion; or (2) enjoin him from acting where his action would be an abuse of discretion; or (3) compel him to make reparation where he has acted in abuse of discretion; or (4) remove him as trustee because of his failure properly to exercise the discretion conferred upon him." Scott, Law of Trusts, § 187.1 (3d ed. 1967). There is no contention that First Bank threatens to commit or has already committed an act such as would constitute an abuse of its discretion under the trust agreement. The sole contention is that First Bank's *failure* to exercise its discretionary power to oust the Corporation from possession and operation of the water system is actionable. Under these circumstances, appellees have no right to recover monetary damages from First Bank. They would have only the right to seek the equitable remedy of specific performance or removal of First Bank from its trusteeship. See generally *C & S Nat. Bank v. Haskins*, supra at 139 (9). Accordingly, the trial court erred in Case No. 72970 insofar as it denied summary judgment in favor of First Bank as to all claims for money damages asserted by appellees.

### *Case Nos. 72969, 72973, 72974, 72975, 72976.*

4. The actions against appellant-Smith were predicated upon two theories. First, appellees alleged that Smith had himself personally undertaken the performance of certain acts in connection with the operation and maintenance of the Corporation's water system. As the result of those acts, appellees alleged they had been damaged and Smith should be held personally liable. Second, appellees alleged that Smith was the alter ego of the Corporation. Accordingly, appellees alleged that Smith should be held personally liable for any liability that would otherwise be attributable to the Corporation. In support of his unsuccessful motion for summary judgment, Smith adduced uncontroverted evidence that, notwithstanding his sole ownership thereof, he had operated the Corporation as an entirely separate entity.

A corporation is a separate and distinct legal entity from its officers, stockholders or agents. See generally *Casey v. Carrollton Ford Co.*, 152 Ga. App. 105, 106 (1) (262 SE2d 255) (1979). Nevertheless, a corporation is held to be vicariously liable for the torts of its agent that are committed in the prosecution of and within the scope of its business. See OCGA § 51-2-2. Accordingly, one who is damaged as the result of a tort that is actually committed by a corporate agent may sue either the individual agent, seeking to establish the agent's personal liability for the damages, or the corporation, seeking to establish its vicarious liability for the torts of its agent, or the injured party can sue both. As a general rule, however, one who merely occupies the

capacity of a corporate officer cannot be held to be vicariously liable for such damages as would otherwise be recoverable from his corporate principal. " '[A]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor, but an officer of a corporation who takes no part in the commission of a tort committed by the corporation is not personally liable unless he specifically directed the particular act to be done or participated or co-operated therein.' [Cit.]" *Lincoln Land Co. v. Palfery*, 130 Ga. App. 407, 411 (1a) (203 SE2d 597) (1973). There is a recognized exception to this general rule of non-liability for a non-participating corporate officer: "[I]f the individual who is the principal shareholder or owner of the corporation conducts his private and corporate business on an interchangeable or joint basis as if they were one, then he is without standing to complain when an injured party does the same. 'Under such circumstances, the court may disregard the corporate entity.' [Cits.]" *Bone Constr. Co. v. Lewis*, 148 Ga. App. 61, 63 (4) (250 SE2d 851) (1978).

When these principles are applied in the cases sub judice, it appears that Smith has carried his evidentiary burden of demonstrating the inapplicability of the "piercing the corporate veil" exception to the general rule of non-liability for a non-participating corporate officer. Accordingly, if Smith has any personal liability to appellees as the result of the Corporation's operation and maintenance of the water system, it can only be for such tortious acts as he personally committed or specifically directed be done. Genuine issues of material fact remain as to Smith's personal liability under this applicable theory. It follows that the trial court erred insofar as it denied partial summary judgment in favor of Smith and thereby failed to eliminate as a triable issue that of Smith's liability under an alter ego theory. The judgments in these cases are therefore affirmed in part and reversed in part.

### Case No. 72971.

5. As noted above, the agreement of 1983 between the Corporation and Abbott did not purport to create a trust pursuant to OCGA § 53-12-31. The purpose of the agreement was not to secure the Corporation's obligation to provide water to appellees' property and appellees were not named as beneficiaries therein. What the agreement does show is that, by contract, the Corporation's responsibilities for operation and maintenance of the water system were delegated by the Corporation to, and assumed by, Abbott. Accordingly, any viable claim against Abbott must be predicated upon his assumption of the operation and maintenance of the Corporation's water system, and not upon his asserted capacity as the appellees' trustee.

Events that occurred or conditions which existed prior to Abbott's assumption of control over the water system are irrelevant to his liability. If Abbott is liable to appellees, it is only as the result of his own acts or omissions after he assumed control. The fact that appellees were not supplied with uncontaminated water after Abbott assumed the control would not necessarily show that he was negligent in failing to correct the pre-existing problem. Abbott did not assume the capacity of insurer of the purity of appellees' water. As the operator of the water system, he was only obligated to exercise ordinary care under the existing circumstances in order to avoid liability in negligence. See *City of Tallapoosa v. Goebel*, 63 Ga. App. 1 (3) (10 SE2d 201) (1940). However, merely because Abbott may have undertaken some actions as operator of the water system to correct the pre-existing contamination problem would not necessarily show that he is not liable in negligence to appellees. "[N]egligence consists of either an omission to do an act which ought to be done, or *the omission to perform properly what one undertakes to perform*. [Cits.]" (Emphasis supplied.) *Johnson v. Landing*, 157 Ga. App. 313, 315-316 (1) (277 SE2d 307) (1981). Construing the evidence most strongly against Abbott as the moving party, it would appear that genuine issues of material fact remain with regard to whether his actions undertaken during the relevant period demonstrate the exercise of ordinary care by one operating the water system under the then-existing circumstances. Accordingly, the trial court did not err in denying his motion for summary judgment. The judgment in this case is therefore affirmed.

*Judgments reversed in Case Nos. 72970 and 72972. Judgments affirmed in part and reversed in part in Case Nos. 72969, 72973, 72974, 72975, and 72976. Judgment affirmed in Case No. 72971. McMurray, P. J., and Pope, J., concur.*

### ON MOTION FOR REHEARING.

Appellee First Bank urges that the denial of its motion for summary judgment should be reversed upon the basis that it lacks the legal authority to serve as a trustee. First Bank relies upon OCGA § 7-1-310 (c), which provides, in part: "Every bank . . . operating pursuant to this chapter shall possess all of the rights, privileges, powers, and responsibilities herein conferred upon trust companies; provided, however, that no such bank . . . shall exercise such powers and privileges without the prior written approval of the [D]epartment [of Banking and Finance (Department)] after a careful consideration of the factors enumerated in Code Section 7-1-394, relating to the chartering of trust companies." First Bank urges that, pursuant to OCGA § 7-1-310 (c), it has never sought nor received any official written ap-

proval from the Department regarding its operation of a trust department and has never operated such a department. Thus, according to First Bank, it is not authorized under the laws of this State to serve as a trustee and therefore cannot be held to be a trustee in this case.

Notwithstanding First Bank's lack of an official trust department as such, OCGA § 7-1-310 (c) contains the further provision: "Any bank exercising or partially exercising *trust powers* prior to February 27, 1976, authorized by its articles may continue to exercise or partially to exercise those *powers* to the extent approved by the [D]epartment without the necessity of obtaining a new approval. Such powers may be exercised only if authorized by the articles of incorporation of the financial institution." (Emphasis supplied.) First Bank does not contend that its articles of incorporation do not authorize it to exercise trust powers. The evidence of record shows that First Bank was chartered for the purpose of conducting "a general trust and banking business. . . ." The evidence of record further shows that First Bank was exercising or partially exercising trust powers prior to February 27, 1976, and was doing so with the approval of the Department. In 1972, First Bank secured the Department's approval to merge with Industrial Bank and Industrial Bank was at that time the valid trustee as to the title to the Corporation's property. The effect of this merger with Industrial Bank was to confer the trusteeship upon First Bank by operation of law. See Former Ga. Code Ann. §§ 13-1406; 1407; OCGA § 7-1-536 (c), (e). Thus, the absence of authorization for a full-blown trust *department* is irrelevant under the circumstances of this case. Since First Bank was already exercising the trust *power* that is here in issue and was doing so with the prior approval of the Department on the date that OCGA § 7-1-310 (c) became effective, securing "new approval" to continue to exercise that power was unnecessary. Accordingly, we adhere to our ruling that First Bank has been the trustee of the title to the Corporation's property since 1972 but, for the reasons discussed in Division 3 of the opinion, it was error to deny its motion for summary judgment.

DECIDED MARCH 3, 1987 —
REHEARINGS DENIED MARCH 31, 1987 — 

*Alex L. Zipperer III, James B. Ashby*, for Smith.
*Leamon R. Holliday III*, for First Bank of Savannah.
*Luhr G. C. Beckmann, Jr., Joseph H. Barrow*, for Abbott.
*Roland B. Williams*, for Savannah Bank & Trust.
*A. Martin Kent*, for Hydraulics Supply.
*H. Sanders Carter, Jr.*, for Thomas & Hutton.

*Brent J. Savage, George L. Lewis,* for appellees.