### 44715. BASS et al. v. LEDBETTER et al.
(363 SE2d 760)

HUNT, Justice.

The Pine Forest Subdivision Water System serves a subdivision of about 300 homes in Chatham County and, though privately owned, is nonetheless subject to regulation by the Environmental Protection Division of the Department of Natural Resources (EPD). Four days after an oily substance contaminated the system on July 8, 1983, the director of EPD issued an emergency order to remedy the problem; he subsequently continued to monitor the progress of the required corrective measures until the water company had cleaned or replaced all of its pipes and other equipment. The residents, however, continued to experience periodic difficulties, apparently because the pipes on their private property remained contaminated. Bass and the other residents consequently brought this mandamus action to force the director to compel the water company to clean those pipes as well. In a

related case, they also sought damages and other relief against the water company and its owners. See *Smith v. Hawks*, 182 Ga. App. 379 (355 SE2d 669) (1987).

The controlling issue therefore concerns the director's statutory authority under the Georgia Safe Drinking Water Act of 1977 (OCGA § 12-5-170 et seq.): can he legally order the water system's owners to clean contaminated pipes located on the property of its residential consumers? The trial court, agreeing with the director's interpretation of the statute that he had no such authority, granted him summary judgment. We affirm.

The legislative policy underlying the enactment of the Georgia Safe Drinking Water Act is set out in OCGA § 12-5-171, which demonstrates a clear legislative intent to protect the health of the people of this state by controlling the public water supply. Nevertheless, we agree with the director that his mandate is limited to the public aspects of water delivery systems such that in this case, he is governed by the provisions of OCGA § 12-5-172 (11) defining a "public water system" as ". . . a system for the provision to the public of piped water for human consumption, if such system has at least 15 service connections or regularly serves at least 25 individuals. Such term includes but is not limited to any collection, treatment, storage, and distribution facilities *under the control of the operator of such system* and used primarily in connection with such system, and *any collection or pretreatment storage facilities not under such control* which are used primarily in connection with such sys..em." (Emphasis supplied.)

Accordingly, EPD authority is confined either to any facilities of the public water system under the operator's control or to any collection or pretreatment storage facilities[1] not under the operator's control. Clearly, the private lines running from the service connections of the distribution facilities into the homes of the residents are not within the control of the operator,[2] and consequently, the EPD is charged with no responsibility for those private lines. There was, in short, no abuse of discretion by the director, and summary judgment was proper.

*Judgment affirmed. All the Justices concur, except Weltner, J., who concurs specially, and Smith, J., who dissents.*

---

[1] Neither collection nor pretreatment storage facilities is involved in this matter.

[2] Both parties recognize that EPD's regulatory authority applies only to a public water system. Therefore, a construction of the definition of public water system as contained in OCGA § 12-5-172 (11) determines the outcome. It is not argued that the Act covers the water in the residents' private property under the "cross-connection" definition, OCGA § 12-5-172 (3), which is limited to an unregulated water supply which might cause backflow or back-siphonage.

WELTNER, Justice, concurring specially.

I agree that the judgment of the trial court denying mandamus absolute should be affirmed. Affirmance should be based, however, upon the preliminary question of whether the statute *compels* the director of the Environmental Protection Division to take the action sought by the complainants.

Whether that action is within or beyond his statutory powers (as disputed between the majority and the dissent), it is plain that *any* power granted to the director lies within his official discretion. Mandamus, of course, will not lie for discretionary acts. "Mandamus shall not lie as a private remedy between individuals to enforce private rights nor to a public officer who has an absolute discretion to act or not to act unless there is a gross abuse of such discretion." OCGA § 9-6-21 (a).

SMITH, Justice, dissenting.

The majority concludes that even if the public water lines under the operator's control contaminated all the private water lines in the system, the director's authority regarding the water system *as a whole* extends solely to the public lines. Not only is that conclusion logically odd, but it is also directly at odds with the clear legislative intent of the Georgia Safe Drinking Water Act — an intent recognized by the majority opinion itself — namely, *to protect the health of the people of Georgia.*

The EPD is charged with the responsibility of overseeing the quality of Georgia's drinking water to ensure the protection of the public health and welfare. To that end, the legislature vested the EPD and its director with broad discretionary powers. See OCGA § 12-5-174 et seq. The lone explicit statutory restriction on the director's power is found in OCGA § 12-5-178, which limits him only as to making any variances or exemptions *less stringent* than the federal standard.

The legislature recognized that the EPD and its director need broad discretionary powers in order to protect the health of the people. The declaration of policy states in part: "It is the intent of this part to confer discretionary administrative authority upon such agency to take the above related circumstances into consideration in its decisions and actions in determining, *under the conditions prevailing in specific cases, those procedures to best protect the public interest.*" OCGA § 12-5-171. Accordingly, the administration of a *public* water system ought always to be conducted with an eye toward serving *the public.* But here, neither the public interest nor the public health was protected by requiring the operator to clean some lines while leaving others contaminated.

Furthermore, OCGA § 12-5-172 (11) defines a "public water sys-

tem" first and foremost as "a system for the provision *to the public* of piped water *for human consumption, . . . .*" (Emphasis supplied.) In this case, water fit "for human consumption," while accessible at the service connection, is nevertheless unavailable *to the public in their homes* due to the water system's having contaminated the lines running from the service connection to those homes. Contrary to the majority's view that the director's duty ends at the service connection, the statute contemplates and provides the authority for the EPD and its director to ensure that *the people receive water fit for human consumption.*

Would the majority of this Court hold that the director's duty ends at the service connection if the public water system had contaminated all the lines with arsenic and the lines from the service connections to the homes remained contaminated?

DECIDED JANUARY 21, 1988.

*Adams, Gardner, Ellis & Inglesby, Brent J. Savage, George L. Lewis,* for appellants.

*Michael J. Bowers, Attorney General, Robert S. Bomar, Senior Assistant Attorney General,* for appellee.