**Terrance J. VELTEN, Plaintiff–Appellant,**

v.

**REGIS B. LIPPERT, INTERCAT, INC., Intercat Pacific, Inc., formerly Intercat, U.S.A., Defendants–Appellees.**

No. 91–9061.

United States Court of Appeals, Eleventh Circuit.

March 17, 1993.

---

12. He does not claim that the prescribed procedures were unfair.

C. James McCallar, Jr. and Mark Bulovic, McCallar & Associates, Savannah, GA, for appellant.

Frank T. Laznovsky, Kirlin Campbell & Keating, New York City and Jane E. Fahey, Bondurant Mixson & Elmore, Atlanta, GA, for appellees.

Before KRAVITCH, Circuit Judge, GODBOLD and OAKES [*], Senior Circuit Judges.

GODBOLD, Senior Circuit Judge:

This appeal concerns appellant Velten's claims that he is entitled to a one-third ownership interest in Intercat, Inc. or its monetary equivalent. He asserts two different theories entitling him to relief: (1) an oral agreement with defendant Lippert and/or defendant Intercat, Inc. that he be given a one-third interest, and (2) fraudulent inducement by Lippert inducing Velten to enter into a written contract of employment with Intercat, Inc. The district court granted defendants' motion for summary judgment on the oral agreement claim because it concluded that the parol evidence rule prevented Velten from introducing evidence of the alleged oral agreement. It granted summary judgment on the fraud claim on the ground that Velten had affirmed the employment contract with Intercat, thus waiving his fraud claim, and he had failed to present sufficient evidence of fraud. We affirm in part, reverse in part, and remand.

## I. FACTUAL BACKGROUND

Velten, a chemical development engineer, and Lippert, an executive, have spent their careers in the petroleum industry's fluid cracking catalyst field. In April 1986 the two met in Savannah, Georgia, to discuss the development of a company to manufacture and market fluid cracking catalysts. What transpired at the meeting is disputed. Velten contends that Lippert proposed that they, along with Horacio Gonzales, form a company to be called Intercat. Velten would handle product development, Lippert would run the business affairs, and Gonzales would be in charge of marketing. Each would own one-third of the company to be formed. Velten contends that he agreed to this proposal. Lippert contends, however, that he did not offer to make Velten an owner in the company to be formed but only offered him a consulting position in Lippert's already existing business.

Regardless of what was said at the Savannah meeting, it is now clear that prior to the meeting Lippert had formed a company called Intercat USA Inc.[1] It is also clear that after the meeting, by written contract dated April 22, 1986, Velten agreed with Intercat USA Inc. to work as a consultant. The contract provided that, contingent upon the company's receiving a development contract, Velten was to be paid at a daily rate. Velten contends that he only agreed to be paid as a consultant on a contingent basis because he was going

---

[*] Honorable James L. Oakes, Senior U.S. Circuit Judge for the Second Circuit, sitting by designation.

1. Intercat USA Inc.'s name was later changed to Intercat Pacific, Inc.

to be a one-third owner in the proposed company. According to Lippert the written consulting contract constitutes the sole agreement concerning Velten's compensation.

Intercat, Inc. was incorporated by Lippert on November 13, 1986 and succeeded by contract to the rights, obligations, and assets of Intercat USA Inc.[2] Velten began to work as a consultant as agreed and Intercat became successful. Velten contends that after he began working he repeatedly asked Lippert for documentation showing his one-third ownership interest and that Lippert responded that the paperwork should wait until the company's survival was assured. Velten signed a new consulting agreement with Intercat dated March 1, 1987, and the text of the contract revealed that the company was incorporated. According to Velten, he then began to request stock certificates representing a one-third interest. In spring 1988 Lippert produced a plan that gave 60% of Intercat to himself, 10% to his lawyers, and provided for the other 30% to be distributed among all the employees. In September 1988 he offered Velten 5%. Velten again asked for one-third and resigned when Lippert refused his request. Lippert agrees that he offered Velten 5% and that Velten resigned because he wanted a greater share of the company. He denies that he ever offered Velten a one-third interest in the company and asserts that the closest Velten ever came to asking for a one-third interest was in September 1988 when he requested 30% of the outstanding stock.

Velten sued Lippert, Intercat USA Inc., and Intercat, Inc. He claimed that he was owed money under the consulting agreements and that he was entitled to one-third of Intercat or its monetary equivalent on three different bases: he was fraudulently induced to work for Intercat; he was a party to an oral contract that he would be given a one-third interest in the company; and he was entitled to the value of one-third of Intercat under a quantum meruit theory.[3] The district court granted summary judgment to Velten on his claim that he was owed money under the consulting agreements. The defendants do not question this decision. On the oral agreement and the quantum meruit claims, the court granted defendants' motion for summary judgment on the ground that the parol evidence rule prevented Velten from establishing the existence of an oral agreement. It granted defendants' motion for summary judgment on Velten's fraud claim because it concluded that Velten had waived that claim by affirming the consulting agreements and that he had not presented sufficient evidence of fraud.

The issues on appeal are whether the court correctly concluded that the parol evidence rule prevented Velten from establishing the existence of an oral agreement to which he was a party and whether it correctly concluded that Velten had waived his fraud claim by affirming the consulting agreements and had not presented sufficient evidence of fraud.[4] We hold that the parol evidence rule does not prevent Velten from establishing an oral agreement between him and Lippert in his individual capacity, that Velten has not waived his right to fraud damages against Lippert or Intercat, and that he has presented enough evidence of fraud to survive summary judgment. We therefore, on Velten's oral agreement claim, affirm the district court's grant of summary judgment to Intercat, but reverse the summary judgment to Lippert individually, and remand. On Velten's fraud claim, we reverse the summary judg-

---

**2.** Intercat USA Inc. ceased formal operations in March 1987.

**3.** The defendants counterclaimed alleging that Velten had unlawfully retained a piece of Intercat's equipment, that Velten's resignation was a breach of the consulting agreements, and asked that Velten be enjoined from violating the secrecy provisions of the consulting agreements. The court held that Velten was bound by the confidentiality provisions of the consulting agreements. The defendants abandoned their claims that Velten had unlawfully retained a piece of Intercat's equipment and that he had breached the consulting agreement. The parties do not challenge the resolution of these issues.

**4.** Velten has not raised in his appeal the district court's resolution of the quantum meruit claim.

ments to both Lippert and Intercat and remand.

## II. STANDARD OF REVIEW

We review de novo the grant of summary judgment and all reasonable doubts are resolved in favor of the nonmovant. *Browning v. Peyton*, 918 F.2d 1516, 1520 (11th Cir.1990).

## III. DISCUSSION

### A. Choice of Law

▇▇▇ Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny, Georgia's substantive law, including its choice of law principles, controls this case. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The Georgia conflict of laws rule for contracts is generally lex loci contractus. *Ferrero v. Associated Materials Inc.*, 923 F.2d 1441, 1444 (11th Cir. 1991). Parties are permitted to stipulate that another jurisdiction's law will apply, *Manderson & Assocs. v. Gore*, 193 Ga.App. 723, 389 S.E.2d 251, 254 (1989), *cert. denied*, (Ga. Jan. 11, 1990), unless that law is contrary to Georgia public policy, *id.*, or the jurisdiction has no substantial relationship to the parties or the transaction, *Ryder Truck Lines v. Goren Equip. Co.*, 576 F.Supp. 1348, 1354 (N.D.Ga.1983).

▇▇▇ The April 22, 1986 consulting agreement contained a clause providing that it "shall be governed by the internal law of the State of New Jersey." New Jersey law provides:

In the absence of ambiguity in a written agreement which is complete, oral evidence cannot be introduced to explain or vary the agreement. If, through mistake or fraud, an agreement in writing does not express the contract which the parties intended to make, the remedy is in equity to reform it, but until it is so

reformed it is unassailable by parol testimony.

*Gabriel v. Glickman*, 25 N.J.Misc. 120, 51 A.2d 106, 108 (1947); *see also Fr. Winkler KG v. Stoller*, 839 F.2d 1002, 1005 (3d Cir.1988) (applying New Jersey law). This is the well known parol evidence rule, and New Jersey's statement of it is not contrary to any of Georgia's public policies. In addition New Jersey has a substantial relationship because Intercat USA Inc., one of the parties to the April 22, 1986 consulting agreement, is a New Jersey corporation. Accordingly, under Georgia's conflict of laws rule, whether the consulting agreement prevents Velten from introducing evidence of a prior oral agreement giving him a one-third ownership interest in Intercat is governed by New Jersey law.[5]

### B. Parol Evidence

The April 22, 1986 consulting agreement contained a clause providing that "this agreement supersedes all prior understandings between the parties." It contained a compensation clause which provided "As compensation for the services to be rendered by Terry Velton [sic] the Company shall pay a fee at the rate of $250 per day ... provided the company is awarded a development contract by the principal." The district court concluded that the consulting agreement was integrated and unambiguous and thus that the parol evidence rule applied. It further concluded that the alleged oral agreement between Lippert and Velten pursuant to which Velten would be given a one-third ownership interest in Intercat concerned Velten's compensation for joining Lippert's efforts to create a new company. Because Velten's compensation was also addressed in the separate—and written—consulting agreement, the court concluded that introduction of evidence of "oral representations by Lippert that the parties agreed that Velten would receive stocks" would amount to a modification of the written consulting agreement and thus was barred by the parol evidence rule.

But in his complaint Velten alleged that when Lippert made the oral agreement he

5. The district court concluded that the result would be the same under Georgia or New Jersey law and thus did not decide which state's law should apply to the parol evidence issue.

acted "individually and/or on behalf of Defendant Intercat." Amended Complaint ¶ 11. The complaint thus alleged that Velten had an oral agreement with three different sets of parties: (1) jointly with Lippert individually and Intercat, (2) with Lippert acting as Intercat's agent, and (3) solely with Lippert individually. Because the analysis of the parol evidence rule depends on the identity of the parties to the oral agreement, it is critical to examine all three possibilities.

### 1. Lippert Individually and Intercat

If the oral agreement is between Velten on one hand and on the other hand Lippert and Intercat jointly, Velten contends that evidence of its existence is not barred by the written consulting agreement between him and Intercat because it would be a collateral oral agreement to the written consulting contract with Intercat. The district court examined this possibility and concluded that the alleged oral agreement was not collateral to the written consulting contract because both agreements concerned Velten's compensation for leaving his old job and joining Lippert's efforts to create and sustain a new company.

If Intercat is a party to the oral agreement, the parties to both the oral agreement and the written consulting contract include Velten and Intercat and the parol evidence rule then is applicable. Velten contends that the district court incorrectly concluded that evidence of an oral agreement about the ownership of Intercat would vary the terms of the written agreement concerning his compensation as a consultant. Under his theory ownership is a subject distinct from compensation, and a contract addressing compensation should not be expected to include an agreement concerning ownership.

New Jersey permits the introduction of parol evidence of a collateral oral agreement on a subject distinct from that of the written contract. *Shinn v. Black*, 117 A. 142, 142 (N.J.1922). This means that the subject matter of the two agreements must be different. *Loxley v. Studebaker*, 75 N.J.L. 599, 68 A. 98, 101 (N.J.

1907). For example, if two parties have a written contract for the sale of property, an oral warranty as to the quality of the property would not relate to a subject matter distinct from the written contract. *Id.* (*citing Naumberg v. Young*, 44 N.J.L. 331 (N.J.1882)). Although Velten is correct that the alleged oral ownership agreement might be a different type of agreement than the written contract paying him a daily rate as a consultant, the subject matter of both agreements is the same: Velten's compensation for providing his services to Intercat. Accordingly, the district court correctly concluded that Velten may not introduce evidence of the alleged oral agreement if it was between him on the one hand and Lippert and Intercat on the other.

### 2. Lippert as Intercat's Agent

As we have noted, Velten alternatively alleged that the oral agreement giving him a one-third ownership interest was made by Lippert as Intercat's agent. This theory does not, however, change the parol evidence analysis discussed above. Velten is permitted to introduce evidence showing that Lippert, when he made the oral agreement, was actually acting as Intercat's agent. *Looman Realty Corp. v. The Broad Street National Bank of Trenton*, 32 N.J. 461, 161 A.2d 247, 253 (1960). If Lippert were acting as Intercat's agent, Intercat would necessarily be Lippert's principal and a party to the oral agreement. *See id.* at 255–56. As discussed above, if Intercat was a party to the oral agreement, the written consulting agreement between Intercat and Velten prevents proof of the oral agreement.

### 3. Lippert Individually

The last alternative alleged by Velten is that the oral agreement to give him a one-third ownership interest in Intercat was between him as one party and Lippert in his individual capacity as the other. It is clear that the April 22, 1986 written consulting agreement was between

Velten and Intercat.[6] Velten contends that, if the oral agreement is between him and Lippert individually, evidence of its existence would not be barred by the written consulting agreement between him and Intercat because the two agreements would involve different parties. The district court did not consider the possibility that the oral agreement was between Velten and Lippert individually.

Prof. Williston has stated:

> [I]t does not follow from the parol evidence rule "that the written contract between A and B, which is conclusive as to them, must be of necessity so, as to the proof of any rights or claims of A against C merely because they grow out of the same business,"....

4 Samuel Williston and Walter H.E. Jaeger, Williston on Contracts § 647, at 1159 (3d ed. 1961) (*quoting Evans v. Wells*, 22 Wend. 324, 345 (N.Y.1839) (opinion of Sen. Verplanck)). New Jersey follows this rule. In *Shreve v. Crosby*, 72 N.J.L. 491, 63 A. 333 (N.J.1906), the New Jersey Court of Errors and Appeals held that "[t]he rule that parol evidence will not be admitted to vary the terms of a written contract does not apply ... as between a party and a stranger." *Id.* at 337 (citations omitted); *see also Halliwell v. Trans–States Finance Corp.*, 118 A. 837, 838 (N.J.1922); *Brown v. Honiss*, 74 N.J.L. 501, 68 A. 150, 158 (N.J.1907); *Tide Water Associated Oil Co. v. Hamlen*, 56 A.2d 722, 725 (N.J.Ch. 1948). The written consulting agreement between Velten and Intercat does not prevent Velten from showing evidence of a prior oral agreement between him and Lippert individually. We therefore reverse the district court's grant of summary judgment on Velten's claim for breach of an oral agreement by Lippert individually.

## C. Fraudulent Inducement

Velten contends that he is entitled to recover from Lippert or Intercat a one-third ownership interest or its monetary equivalent because he was fraudulently induced to enter into the written consulting contracts. The alleged fraudulent acts are Lippert's statements at the Savannah meeting and subsequent reaffirmations that Velten would receive a one-third ownership interest in Intercat. Velten contends that these statements were made by Lippert individually and in his capacity as Intercat's president. He further contends that he entered into the consulting agreements on April 22, 1986 and March 1, 1987 in reliance on Lippert's representations that he would receive a one-third ownership interest. The district court granted the defendants' motion for summary judgment on this issue because it concluded that Velten, by affirming the contracts, had waived his right to maintain a fraud claim and that Velten had failed to show sufficient evidence of fraud.

▉ There is an initial issue whether New Jersey or Georgia law should govern this claim. Under Georgia law fraudulent inducement is a tort action. *Gibson v. Home Folks Mobile Home Plaza, Inc.*, 533 F.Supp. 1211, 1221 (S.D.Ga.1982). The Georgia conflict of laws rule for tort actions is lex loci delicti. *Risdon Enters. v. Colemill Enters.*, 172 Ga.App. 902, 324 S.E.2d 738, 740 (1984). The place of the wrong is the jurisdiction where the harm was suffered or where the last event necessary to make an actor liable for the alleged tort takes place. *Id.* Because Velten resided at all relevant times in Georgia any harm suffered as a result of the fraud occurred there. Similarly, Velten's reliance and any subsequent damages are the last events necessary to make Lippert or Intercat liable and both occurred in Georgia. Under either statement of the rule Georgia law governs Velten's fraud claim.

▉ Velten seeks to hold liable either Lippert in his individual capacity or Intercat for the alleged fraudulent misrep-

---

**6.** The April 22, 1986 written consulting agreement was between "Intercat USA Inc. ... and Terry Velton [sic]." The contract was signed Intercat USA Inc. by Regis Lippert, President. Under New Jersey law a signature in that form unambiguously establishes that the person signed only in his or her corporate capacity. *See Budelman v. White's Express & Transfer Co.*, 49 N.J.Super. 511, 140 A.2d 552, 555 (Ct.App. Div.1958). Lippert individually was not a party to the April 22, 1986 consulting agreement.

resentations made by Lippert while he was Intercat's president. Under Georgia law a corporation is vicariously liable for the torts of its agents "that are committed in the prosecution of and within the scope of its business." *Smith v. Hawks,* 182 Ga. App. 379, 355 S.E.2d 669, 675 (Ga.Ct.App. 1987). A victim of a tort committed by a corporate agent may sue the agent personally or the corporation under a theory of vicarious liability or both. *Id.* Velten therefore had the right to sue both Lippert and Intercat for fraudulent misrepresentations alleged to have been made by Lippert as Intercat's president.

■■■■ Georgia law provides two options for a victim of fraudulent inducement: the victim can affirm the contract and sue for breach or rescind and sue in tort. *Carpenter v. Curtis,* 196 Ga.App. 234, 395 S.E.2d 653, 655 (1990). If the victim chooses to affirm the contract, he may nevertheless obtain fraud damages as long as he does nothing to waive the fraud damages. *Id.* Waiver occurs if the affirmed contract contains "a clause which provides in essence that no representation, promise or inducement not included in the contract shall bind any party." *Id.* By bringing a claim for the money owed him under the contract for consulting services, Velten affirmed the consulting agreements. The district court concluded that this action constituted a waiver because the April 22, 1986 consulting agreement included a clause providing that "this agreement *supersedes* all prior understandings and agreements between the parties, and may not be amended orally, but only by a writing signed by the parties hereto." (emphasis added). The March 1, 1987 consulting agreement did not contain a similar clause.

■■■ Because the March 1, 1987 agreement did not contain any clause that could be construed as a merger or entire agreement clause the district court erred when it held that Velten had waived the right to seek fraud damages for oral misrepresentations that induced him to sign the March 1, 1987 contract. Whether the April 22, 1986 consulting agreement contains such a clause is a closer issue. The contract clause in *Carpenter* provided:

This Agreement contains the entire understanding between the parties hereto with respect to the transactions contemplated hereby; all prior negotiations and agreements between the parties hereto are superseded by this Agreement; and there are no representations, warranties, understandings, or agreements other than those expressly set forth herein....

*Id.* at 654. The court focused on the language providing that "no representation, promise or inducement not included in the contract shall bind any party." That language gave clear notice to the parties that oral inducements not included in the text of the contract should not be relied upon. Other cases finding waiver also include language expressly stating that the contract constitutes the entire agreement and/or that there are no other representations, promises or inducements not included in the contract. *See del Mazo v. Sanchez,* 366 S.E.2d 333, 335 (Ga.Ct.App.), *cert. denied,* (Ga. June 1, 1988); *Roth v. Bill Heard Chevrolet, Inc.,* 166 Ga.App. 583, 305 S.E.2d 31, 32 (1983); *Touche, Inc. v. Dearborn,* 161 Ga.App. 188, 291 S.E.2d 35, 38 (1982); *Condios, Inc. v. Driver,* 145 Ga.App. 537, 244 S.E.2d 85, 86 (1978); *Garrett v. Diamond,* 144 Ga.App. 428, 240 S.E.2d 912, 913 (1977); *Hannah v. Shauck,* 131 Ga.App. 834, 207 S.E.2d 239, 240 (1974). Although the April 22, 1986 agreement provides that it "supersedes all prior understandings and agreements," it does not state that it constitutes the entire agreement or that there are no other representations, promises or inducements not included in the contract. We conclude that the language in the April 22, 1986 agreement providing that it *supersedes* all prior agreements does not give sufficient warning that *representations not contained in the contract may not be relied upon,* so that Velten did not waive his right to fraud damages by affirming the April 22, 1986 agreement. *Accord Gibson,* 533 F.Supp. at 1222.

■■■ The district court also concluded that Velten had not presented enough evidence of fraud to withstand summary judg-

ment. To prove fraud Georgia requires that the defendant, at the time of the misrepresentation, knew the misrepresentation was false. *Seale v. Miller,* 698 F.Supp. 883, 898 (N.D.Ga.1988). Accordingly, the misrepresentation must involve present facts or fall within the exceptions for a promise to act in the future made with a present intention not to perform or a promise about a future event that the promisor knows will not occur. *Lively v. Garnick,* 160 Ga.App. 591, 287 S.E.2d 553, 557 (1982). The district court concluded that Velten had not presented enough evidence that Lippert made misrepresentations about present facts or made promises to act with the present intention not to perform. It found that the only evidence presented by Velten supporting his contention that Lippert did not have a present intent to perform his promise to make Velten a one-third owner was that Lippert had formed Intercat in March 1986 but had represented to Velten in April 1986 that the corporation had not yet been formed. The court held that on this evidence no reasonable juror could find for Velten.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), holds that a party moving for summary judgment bears the initial burden of showing, by reference to the record, that there is not a genuine issue of material fact. *Id.* at 325, 106 S.Ct. at 2553–54; *see also Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). If the movant meets this burden the nonmoving party must then go beyond the pleadings and by affidavits, depositions, or other evidence and designate facts that show there is a genuine issue for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *see also Clark,* 929 F.2d at 608. This requires more than showing a mere scintilla of evidence; the nonmovant must show that reasonable jurors could find by a preponderance of the evidence that the nonmovant is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). The court should not make credibility judgments. Instead, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513.

■ Velten asserts that because of Lippert's willful misrepresentations that Velten would be made a one-third owner of Intercat, Velten was fraudulently induced to enter into the consulting agreements. Amended Complaint, ¶ 25–27. At his deposition he stated that at the April 1986 meeting Lippert offered to make him a one-third owner in a company to be formed, and in the succeeding months Lippert reaffirmed that Velten was a one-third owner and that he would eventually put that in writing. To support his contention that Lippert never intended to honor these promises, Velten showed that Lippert incorporated Intercat in March 1986 with himself as sole stockholder. Lippert does not deny that he had incorporated Intercat prior to the April 1986 meeting, but he denies that he ever offered Velten a one-third ownership interest.

Because a court may not make credibility judgments, we must assume that Velten's version is correct. The issue before us therefore is whether the district court correctly concluded that the fact that Lippert had already incorporated Intercat with himself as sole shareholder and then repeatedly told Velten that he would be a one-third owner in a company to be formed later would be sufficient for a reasonable juror to find in Velten's favor. The district court considered the misrepresentations allegedly made at the April 1986 meeting to be the only evidence offered by Velten. But at his deposition Velten stated that in addition to the statements made at the April meeting, during the time period from April 22, 1986 to December 31, 1986 Lippert, on at least five occasions, told him he would be a one-third owner. Velten Dep., at 130. If Velten's version is correct, Lippert repeatedly told Velten that he would be a one-third owner in Intercat even though Lippert had already incorporated Intercat with himself as sole shareholder. Given that Lippert had already incorporated Intercat without giving Velten any ownership interest, it would not be unreasonable for a juror to conclude that at the time of his

alleged misrepresentations Lippert had no intention of making Velten a one-third owner of a company to be formed. Accordingly, there is a genuine issue of fact concerning Lippert's intention at the time of his alleged misrepresentations and the district court erred when it granted summary judgment on Velten's claim of fraudulent inducement.

## IV. CONCLUSION

AFFIRMED with respect to Velten's claim that he had an oral agreement with Intercat or Intercat Pacific, Inc. (formerly Intercat USA Inc.) giving him a one-third ownership interest in a company to be formed. REVERSED and REMANDED with respect to Velten's claim that he had an oral agreement solely with Lippert in his individual capacity to give him a one-third ownership interest in a company to be formed. REVERSED and REMANDED with respect to Velten's claim of fraudulent inducement against both Lippert and Intercat or Intercat Pacific, Inc. (formerly Intercat USA Inc.).